IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| **RAYMOND E. SIMS**<br>1115 Avondale Avenue<br>Toledo, Ohio 43607<br><br>      Plaintiff,<br><br>      v.<br><br>**MIDWEST TERMINALS OF TOLEDO, INTERNATIONAL, INC.,**<br>3518 St. Lawrence Dr.<br>Toledo, OH 43605<br><br>      Defendant, | **CASE NO:**<br><br><br><br>**JUDGE**<br><br><br><br><br>**COMPLAINT (JURY DEMAND ENDORSED HEREON)** |

Now comes Plaintiff, Raymond E. Sims, by and through undersigned counsel, stating the following as his Complaint including claims arising under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. and Ohio's anti-discrimination law, Ohio Revised Code, Chapter 4112, against Defendant Midwest Terminals of Toledo, International, Inc.:

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over Count I and II pursuant to 28 U.S.C. § 1221 because the claim is set forth pursuant to the law of the United States of America.

2. The Court has supplemental jurisdiction over Counts III and IV, Plaintiff's state law claims, pursuant to 28 U.S.C. § 1367, because the claims arise out of the same set of operative facts as Counts I and II.

3. Venue is proper pursuant to 28 U.S.C. § 1391 as the events giving rise to the cause of action occurred in Lucas County in the State of Ohio, within the Northern District of Ohio, Western Division.

**PARTIES**

4. Plaintiff Raymond E. Sims ("Plaintiff") is a natural person residing in Toledo, Ohio.

5. Defendant Midwest Terminals of Toledo, International, Inc. ("Midwest") is a privately owned stevedoring and shipping company.

6. At all relevant time, Defendant Midwest has continuously been and is now conducting business in the State of Ohio, and has continuously been and is now an employer engaged in an industry affecting commerce and meets the definition of "employer" set forth in 42 U.S.C. § 2000e(b).

**FACTS COMMON TO ALL COUNTS**

7. Plaintiff has worked for Midwest and is predecessors including Toledo World Operators, Inc., Toledo World Industries, Inc, and Toledo World Terminal, Inc., at the Toledo Port since at least 1994 and has a good work record.

8. On or around October 7, 2004, Midwest took over operation of the Toledo Port and assumed the collective bargaining agreement with International Longshoremen's Association, Local 1982 ("Local 1982"), among others.

9. Plaintiff was a member of Local 1982 at all relevant times.

10. In or around 2011, Midwest began a labor dispute with Local 1982.

11. Nearly all of Local 1982's membership was African American at the time the conflict with Midwest began.

12. When the dispute with Local 1982 began, Midwest began hiring directly instead of hiring out of the Local 1982 hall.

13. All or nearly all of the employees hired directly by Midwest have been Caucasian.

2

14. Since the beginning of the dispute with Local 1982, Midwest has:

    a. Engaged in discriminatory hiring practices against African American applicants.

    b. discriminatorily applied discipline to African American employees.

    c. required any African American employees involved in a work accident to undergo a drug test, but not require the same for Caucasian employees.

    d. discriminatorily fired African American employees due to their race.

    e. denied African American employees health insurance due to their race.

    f. denied African American employees' access to the guard shack bathroom while Caucasian employees have been permitted to use it.

    g. Denied African American employees convenient parking locations while Caucasian employees are allowed to park nearby.

    h. Allowed all Caucasian employees to show up late for work, while African American employees who are late are overlooked for hiring.

    i. Given all Caucasian employees access to their own lunch room with a workout facility, laundry facilities, tables, and a television, while African American employees are relegated to an old dusty garage.

    j. Giving all Caucasian employees preferential work assignments with newer machines while African American employees have to work in the cargo hold, regardless of seniority.

    k. Giving all Caucasian employees preference in training while African American employees are denied training opportunities.

      i. Note that by denying African American employees equal rights to train, Midwest also denies African American employees' employment, as a lack of training is the most-common reason an African American employee is not hired by Midwest.

    l. Giving all Caucasian employees the opportunity to work for higher paid shifts on nights, weekends, and overtime, while African American employees are denied that opportunity.

    m. Allowed, without discipline, one of its white managers to say that, "No [N-word omitted] will ever work a crane."

    n. Allowed many Caucasian employees to use the N-word and other racial slurs while at work, without discipline.

15. Midwest has created and/or allowed the creation of a hostile work environment for African American employees.

16. Plaintiff worked for Midwest from 2011 to 2013, but was injured twice while at work, on both October 2012, and November 2013. He returned to work in 2015.

17. Upon Plaintiff's return to work, Midwest refused to rehire him because of his race.

18. After filing charges with the National Labor Relations Board, the Ohio Civil Rights Commission, and the Equal Employment Opportunity Commissions ("EEOC") regarding Midwest's discriminatory practices in 2015, Plaintiff was eventually allowed to return to work in 2018.

19. Upon Plaintiff's return to work, he had already acquired sufficient certification for at least one job opening, but Midwest discriminatorily applied its certification standards and

required further training.

20. Upon Plaintiff's return to work, he was denied the ability to train to acquire certain certification that he would need to be hired more frequently.

21. Midwest has repeatedly hired less-senior Caucasian employees over Plaintiff and other more-senior African American employees.

22. Midwest's discriminatory actions and hostile work environment were continuing violations of federal and state law.

23. Midwest even took the unique step of hiring a third-party, all-white company to subcontract certain night work so it didn't have to hire African American former employees.

24. In or around May 2019, Plaintiff complained to Midwest verbally about its discriminatory practices.

25. Following his complaint, he was no longer scheduled for work by Midwest.

26. On or around July 2019, he was suspended from working because of an alleged "safety investigation" which was merely pretext for Midwest's discriminatory and retaliatory reasons for suspending him.

27. Plaintiff was never given due process, including being denied the ability to rebut the charges made against him.

28. On or around July 3, 2019, Plaintiff filed a charge with the EEOC alleging discrimination and retaliation on the basis of his African American race.

29. On or around October 15, 2019, Plaintiff received a Right to Sue Letter dated October 10, 2019, attached hereto as Exhibit 1.

**COUNT I: Discrimination Pursuant to the Civil Rights Act, 42 U.S.C. § 2002e-2, et seq.**

30. Plaintiff incorporates the allegations contained above as if fully written verbatim herein.

31. Plaintiff was a qualified individual as defined by the Civil Rights Act.

32. Plaintiff was subject to adverse employment actions because of his race.

33. Plaintiff was subject to a hostile work environment because of his race.

34. Plaintiff states a cause of action for racial discrimination in violation of the Civil Rights Act of 1964, as amended.

**COUNT II: Retaliation Pursuant to the Civil Rights Act, 42 U.S.C. § 2002e-2, et seq.**

35. Plaintiff incorporates the allegations contained above as if fully written verbatim herein.

36. In or around May 2019, Plaintiff complained to Midwest about its discriminatory practices against African Americans.

37. Plaintiff's employment was terminated because he complained about Midwest's racially discriminatory practices.

38. Plaintiff states a cause of action for retaliation in violation of the Civil Rights Act of 1964, as amended.

**COUNT III: Discrimination in Violation of Ohio Revised Code §§ 4112.02(A) and 4112.99**

39. Plaintiff incorporates the allegations contained above as if fully written verbatim herein.

40. Plaintiff is a member of a protected class because he is African American.

41. Plaintiff is qualified as an employee for Midwest as evidenced by his many years

of service before Midwest took over the Toledo Port.

42. Plaintiff was subject to and suffered from adverse employment actions from Midwest.

43. Midwest replaced Plaintiff with a Caucasian and/or treated similarly situated Caucasian employees more favorably by Midwest.

44. Midwest discriminated against Plaintiff because of his race in violation of Ohio Revised Code §§ 4112.02(A) and 4112.99.

### COUNT IV: Retaliation in Violation of Ohio Revised Code §§ 4112.02(I)

45. Plaintiff incorporates the allegations contained above as if fully written verbatim herein.

46. In or around May 2019, Plaintiff complained to Midwest about its discriminatory practices against African Americans.

47. Plaintiff's employment was terminated because he complained about Midwest's racially discriminatory practices.

48. Plaintiff states a cause of action for retaliation in violation of the Civil Rights Act of 1964, as amended.

WHEREFORE, Plaintiff Raymond E. Sims prays for judgment in his favor, back pay, front pay and reinstatement, punitive damages, pain and suffering, compensatory and non-economic damages in an amount exceeding $75,000.00, attorneys' fees, court costs, pre- and post-judgment interest, and any other relief to which he may be entitled.

>Respectfully Submitted,
>
> /s/ Matthew T. Hurm, Esq.
>Matthew T. Hurm, Esq. (0088818)
>Hurm Law Firm, LLC
>750 Prospect Ave. E., Suite 306
>Cleveland, OH 44115
>(p) (216) 860-1922
>(f) (216) 820-4347
>matt@hurmlawfirm.com
>
>*Counsel for Plaintiff Raymond E. Sims*

**JURY DEMAND**

A trial by jury is hereby demanded on all issues so triable.

>Respectfully Submitted,
>
> /s/ Matthew T. Hurm, Esq.
>Matthew T. Hurm, Esq. (0088818)
>Hurm Law Firm, LLC
>750 Prospect Ave. E., Suite 306
>Cleveland, OH 44115
>(p) (216) 860-1922
>(f) (216) 820-4347
>matt@hurmlawfirm.com
>
>*Counsel for Plaintiff Raymond E. Sims*